**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WALTER L. MOORE,

                                 Plaintiff,

   v.                                        No. 05-CV-13
                                               (TJM/DRH)

LESTER N. WRIGHT, Deputy Commissioner and Chief Medical Officer of the Department of Corrections; RICHARD LESTER, Regional Health Service Administrator; EDWARD DONNELLY, Superintendent, Wende Correctional Facility; DR. DEPRIO,[1] Physician, Wende Correctional Facility; JOHN DOE, 1, Pharmacist, Wende Correctional Facility; MICHAEL GIAMBROUNO, Superintendent, Wyoming Correctional Facility; JOHN DOE, 2, Physician, Wyoming Correctional Facility; FRANK McCRAY, Superintendent, Gowanda Correctional Facility; JOHN DOE #3, Physician, Gowanda Correctional Facility; RAYMOND CUNNINGHAM, Superintendent of Woodbourne Correctional Facility; and MARVAT MAKRM,[2]

                                 Defendants.

---

**APPEARANCES:**                                       **OF COUNSEL:**
WALTER L. MOORE
Plaintiff Pro Se
90-T-5558
Fishkill Correctional Facility
Post Office Box 1245
Beacon, New York 12508

HON. ANDREW M. CUOMO                  CHRISTOPHER W. HALL, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

---

[1] It appears that this defendant's last name is correctly spelled "De Perio." See Defs. Mem. of Law (Docket No. 55, pt. 20) at 9. The correct spelling will be used herein.

[2] It appears that this defendant's name is correctly spelled "Mervat Makram." See Makram Aff. (Docket No. 55, pt. 4) at 1. The correct spelling will be used herein.

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[3]

Plaintiff pro se Walter L. Moore ("Moore"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOCS employees,[4] violated his constitutional rights under the Eighth Amendment. Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 55. Moore opposes the motion. Docket No. 58. For the reasons which follow, it is recommended that defendants' motion be granted.

### I. Background

The facts are presented in the light most favorable to Moore as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

---

[3] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and N.D.N.Y.L.R. 72.3(c).

[4] In Moore's opposition papers, he "decided [to] . . . release defendant's doctors [Mervat Makram] and Lester Wright; John Does # 1, 2, and 3 and; superintendents Frank McCray, Raymond Cunningham and Edward Donnelly from his . . . '1983' action." Docket No. 58 at 1; see also id. at 2-3 (same); id. at Mem. of Law (addressing only claim against defendant De Perio). Moore does not include defendants Lester or Giambrouno by name in his dismissal request. Moore states his decision to proceed against De Perio. Thus, pursuant to Fed. R. Civ. P. 41(a)(2), it is recommended that the complaint be dismissed in its entirety as to all defendants except Lester, Giambrouno, and De Perio as requested by Moore. . While Moore states that he has "decided to release all defendants, except doctor [De Perio] . . . ," he does not explicitly seek dismissal as to Lester or Giambrouno. Accordingly, defendants' arguments on behalf of those two defendants as well as those on behalf of De Perio will be addressed.

2

From December 1991 until September 1992, while Moore was incarcerated at Wende Correctional Facility ("Wende"), Moore experienced problems with ingrown facial hairs. Compl. ¶ 19. Moore was seen by defendant De Prio, a physician, who prescribed Tetracycline. Id.; Moore Dep. (Docket No. 55, pts. 6-9) at 34. Moore contends that, after taking the Tetracycline, the pharmacy refilled his prescription with pills that looked different than those he had been receiving. Compl. ¶ 19; Moore Dep. at 38. Moore was told by the correctional facility pharmacist that he was receiving the same medication, but it was purchased from a different pharmaceutical manufacturer and the pills had a different appearance. Moore Dep. at 38. After taking the pills for approximately two weeks, Moore noticed that his breasts had enlarged. Compl. ¶ 19; Moore Dep. at 40. After finishing the twenty-day refill, Moore never took the Tetracycline again. Moore Dep. at 58-59. Despite Moore's cessation of Tetracycline consumption, his breasts did not return to their normal size.

Shortly thereafter, Moore was transferred to Attica Correctional Facility ("Attica") where he remained for approximately two years and then to Wyoming Correctional Facility ("Wyoming") where he remained from September 1994 until July 1996. Moore Dep. at 53, 64.[5] Moore claims that he was unaware of the grievance committee or its procedures while incarcerated at Wende. Id. at 71. During his incarceration at Attica, Moore filed a grievance in 1994 unrelated to his medical care. Id. at 107. In 1996, Moore filed a grievance relatied to his condition seeking to have breast reduction surgery. Id. at 65-69, 107. In 1996, after Moore spoke with the inmate grievance committee, prison medical

---

[5] Moore states that he never had any complaints about the medical care he received at Attica or Wyoming. Moore Dep. at 112-14.

3

authorities authorized the breast reduction operation. Moore Dep. at 67-70. On June 21, 1996, Moore underwent a breast reduction surgery. Compl. ¶ 20, ex. A 1-3. Unfortunately, the operation was not successful and Moore's breasts remained enlarged. Moore Dep. at 27.

Moore's condition has been identified as "gynecomastia."[6] From the surgery and mammograms, it appears that notwithstanding the enlargement, Moore's breast tissue remains normal and there was nothing "left in [the] breasts" to cause further growth after the 1996 surgery. Moore Dep. at 156-58; Makram Aff. (Docket No. 55, pt. 4) ¶¶ 9-13. This condition's cause is unknown but is "not life threatening and did not have any negative effect on [Moore's] health." Id. ¶¶ 7, 12-13. Moreover, the Tetracycline has both been confirmed and denied as a potentially contributing factor to Moore's gynecomastia. Id. ¶ 4; Moore Dep. at 40-41, 152-54. Moore was provided a back brace which he wore around his chest to minimize the appearance of his enlarged breasts, but his condition has made him the subject of ridicule and led to fights with other inmates. Moore Dep. at 26, 81.

"From July of 1996 until the present time, [Moore] has continuously requested the various medical departments to correct the problem of his enlarged breasts." Compl. ¶ 21. On November 25, 2002, Moore wrote a letter to Lester Wright seeking assistance in his quest for additional surgery. Id. ex. C. In a letter dated December 18, 2002, Richard Lester responded in a letter on Lester Wright's behalf stating that "[t]he surgical necessity decision on denial of breast reduction surgery . . . was appealed to the Regional Medical Director

---

[6]"Excessive growth of the male mammary glands . . . , usually asociated with metabolic derangements . . . ." Dorland's Illustrated Medical Dictionary 724 (28th ed. 1994).

and was agreed with as being cosmetic. There is no medical necessity for surgery at this time." Id., ex. B. This opinion has been supported by Dr. Makramm and consistently cited by DOCS in Moore's numerous requests. Makram Aff. ¶14-15, Moore Dep. 161-62.

In 2003, Moore brought a suit in the Northern District of New York asserting medical deliberate indifference under the Eighth Amendment. Moore Dep. at 92-93. That suit was dismissed as time-barred, but Moore was granted leave to amend. Id. at 94-95. The present action followed.

## II. Discussion

In his complaint Moore alleges that (1) De Prio violated his Eighth Amendment rights by incorrectly prescribing the medication which resulted in Moore's enlarged breasts, (2) Lester violated his Eighth Amendment rights by authoring the letter which denied his second request for surgery, and (3) Giambrouno violated his Eighth Amendment rights by not properly supervising his staff at the correctional facility. Defendants contend that (1) Moore failed to exhaust his administrative remedies, (2) Lester and Giambrouno were not personally involved, (3) there was no deliberate indifference to a serious medical need, (4) there is insufficient evidence asserted against De Prio, and (5) the statute of limitations has expired.[7]

---

[7] Because it is recommended herein that Moore's complaint be dismissed on both the merits and his failure to exhaust administrative remedies, defendants' other arguments will not be addressed.

5

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Exhaustion**

As a threshold matter, defendants contend that Moore has failed to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Exhaustion is generally achieved through the Inmate Grievance Program (IGP).[8] See N.Y.Comp. Codes R. & Regs. tit. 7, § 701.1 et seq. (2001). However, when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to claims. A court must consider whether

    (1) administrative remedies are not available to the prisoner; (2) defendants

---

[8] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

7

> have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. Id. at 688. Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

In this case, Moore failed to exhaust his administrative remedies. The IGP was freely available to Moore. This was demonstrated when Moore successfully filed an inmate grievance in 1996 regarding his medical treatment and, after meeting with the IGRC, resulted in his breast reduction surgery. Moore Dep. 65-70. Moore had also previously filed a grievance on a matter unrelated to his medical condition. Id. 107. Moore failed to file any additional grievances regarding his medical treatment. See generally Bellamy Aff. (Docket No. 55, pt. 2).

Thus, Moored was familiar with the system, as evidenced by his 1996 grievance and others filed in (1) 1998 concerning stolen property, (2) another filed sometime after grieving stolen property, (3) another filed at Woodbourne Correctional Facility pertaining to

overcharges assessed for the copying of Moore's medical record, and (4) another filed in 1994 seeking a particular job assignment. Moore Dep. at 107-10. Additionally, Moore could not have found the IGP futile, as his first and only grievance pertaining to medical care resulted in the surgery he requested. There is also no indication in the record that defendants waived or acted in any way to estop them from asserting Moore's failure to exhaust as a defense.

Accordingly, defendants' motion should be granted on this ground.

### C. Personal Involvement

Lester and Giambrouno contend that Moore has failed to establish their personal involvement. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

9

323-24 (2d Cir. 1986)).

### 1. Lester

Moore contends that Lester violated his constitutional rights by authoring a letter on Wright's behalf, denying Moore's requests for surgery.  "[A]ffirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." Manley v. Mazzuca, No. 01-CV-5178 (KMK), 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citing Foreman v. Goord, No. 02-CV-7089 (SAS), 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement.")). However, where a supervisory official receives, reviews, and responds to a prisoner's complaint, personal involvement will be found. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S .D.N.Y.2004) (citations omitted).

In this case, Lester's letter was the affirmation of previous administrative denials made by the Regional Medical Director.  Compl., ex. C.  Thus, Lester did not review or respond to the complaint as these actions were done by the antoher official and the Regional Medical Director.  As stated above, the absence of any evidence of independent action or decision by Lester is insufficient to establish personal involvement.  Moreover, Moore testified that Lester actually had no involvement in his medical care.  Moore Dep. at 29-31.  Thus, Lester did not participate in or create a policy of unconstitutional medical care.  Additionally, there is nothing in the complaint that can be construed as an assertion that Lester was negligently supervising anyone.

Accordingly, defendants' motion with respect to Lester should be granted on this ground.

10

### 2. Giambrouno

A position in a hierarchical chain of command, absent something more, is insufficient to support a showing of personal involvement. Thus, Giambrouno, as Superintendent of Wyoming, cannot be held liable solely because he held a supervisory position over other defendants. Moore does not specifically contend that Giambrouno was directly involved or had knowledge of the alleged constitutional violations. However, even when reading the complaint in the light most favorable to Moore, any liberally construed allegations of direct involvement and knowledge would still lack any factual basis. Additionally, there is nothing in the complaint that can be construed as a contention asserting negligent supervision.

Accordingly, defendants' motion as to Giambrouno should be granted on this ground.

### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104, (1976).  "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703.  Thus, "disagreements over medications,

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

In this case, Moore has failed to allege a serious medical need. Moore is pursuing an action against De Perio for negligently prescribing Tetracycline for his ingrown facial hairs, resulting in his gynecomastia. However, Moore does not assert any facts illustrating how the ingrown hairs significantly affected his daily activities or produced chronic and substantial pain. Additionally, an ingrown hair is not generally a medical ailment important and worthy of comment or treatment. See Latham v. Johnson, No. 1:07cv910 (JCC/TCB), 2008 WL 153765, at *3 (E.D. va. Jan. 14, 2008) ("The razor bumps that plaintiff alleges, which result from ingrown hairs, even if left untreated, constitute a minimal medical need . . . ."). There is no contention that De Perio participated in any subsequent medical treatment regarding the resulting gynecomastia.

Even if it could be said that Moore's ingrown hairs were a serious medical condition, there are no facts asserted which would show deliberate indifference. Moore went to De Perio for treatment and received it. The provision of the medication was not delayed and refills were promptly provided. While there appears to be mixed authority whether Tetracycline could produce gynecomastia, defendants produce an affidavit indicating that this is not a side effect of the medication. This is corroborated by Moore's testimony that a physician from Attica agreed with defendants and a physician from Wyoming, but

contradicted by a medical book indicating that Tetracycline could cause such side effects. Makrm Aff. ¶ 4; Moore Depo. at 42-43, 46-47, 152-54.

> While a plaintiff alleging medical indifference in a Section 1983 action is not required to produce expert medical testimony, . . . [he or she] may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that [his or her] version of the events is not wholly fanciful.

Nelson v. Rodas, No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at *13 (S.D.N.Y. Sept, 17, 2002) (citing Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir.1994); see also Morris v. Lindau, 196 F.3d 102, 109 (2d Cir.1999)) (internal quotations omitted). In this case, Moore has asserted little more than conclusory allegations, citing information that he independently gleaned from a book and medical staff that cannot be identified and were not documented, as proof that he is correct. This is insufficient to sustain a motion for summary judgment. See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (holding that summary judgment rule that evidence be offered based on personal knowledge is not satisfied by assertions made on information and belief).

Moreover, even if it could be argued that Moore sufficiently alleged that the medication caused the gynecomastia, there are no indications in the record that De Perio acted intentionally or deliberately. At best, Moore has stated a claim for medical malpractice which is insufficient to withstand a motion for summary judgment. See Baez v. Kahanowicz, __ F.3d - -, 2008 WL 2073887, at *2 (2d Cir. May 15, 200* ("Although an inmate may 'prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with 'deliberate indifference' to the inmate's serious medical needs . . . [a] showing of medical malpractice is . . . insufficient to support [such a claim] unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the

prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'") (citation omitted)).

Accordingly, defendants' motion on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1.  Defendants' motion for summary judgment (Docket No. 55) be **GRANTED** as to defendants Lester, De Perio, and Giambrouno and judgment be entered for those three defendants against Moore; and

2. The complaint be **DISMISSED** against all remaining defendants pursuant to Fed. R. Civ. P. 41(a)(2) and the complaint be dismissed in its entirety as to those defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  August 8, 2008
        Albany, New York

_David R. Homer_
United States Magistrate Judge